Donald BESETTE, as next friend on behalf of Christine Besette, Plaintiff and Appellant,

v.

ENDERLIN SCHOOL DISTRICT NO. 22, Defendant and Appellee.

Civ. No. 9983.

Supreme Court of North Dakota.

Oct. 7, 1981.

Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, and Stetson & Jones, Lisbon, for plaintiff and appellant; argued by Jack Marcil, Fargo. Appearance by Wayne Jones, Lisbon.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendant and appellee; argued by Carlton J. Hunke, Fargo.

ERICKSTAD, Chief Justice.

This is an appeal by the plaintiff, Donald Besette, as next friend on behalf of Christine Besette, from the judgment, dated February 13, 1981, of the District Court of Ransom County dismissing Besette's complaint, upon a jury verdict in favor of the defendant, Enderlin School District No. 22 (the School District). Besette also appeals from the district court's denial of his motion for a new trial. We affirm.

On April 20, 1976, Christine sustained injuries when she fell off a slide while playing on the school playground at Alice, North Dakota, during a class recess. At the time of the incident, Christine was six years old and a student in the first grade. Connie Kracht, a teacher's aide employed by the School District, was supervising the playground when Christine fell. Mrs. Kracht watched as Christine climbed to the top of the slide and then began her descent down the slide in a proper sitting position, but Mrs. Kracht was not watching at the moment Christine fell off the right side of the slide as she approached the bottom. After Christine fell Mrs. Kracht assisted her into the school building; a towel sling was then placed on Christine's arm, and she was taken to the doctor.

On October 12, 1977, Donald Besette, Christine's father, filed an action for damages against the School District on his own behalf and as next friend on behalf of Christine. The district court granted a summary judgment dismissing the action on the ground that Besette had failed to file a

claim against the School District within 90 days as required by Section 4 of Chapter 295, 1975 North Dakota Session Laws. In *Besette v. Enderlin School District No. 22,* 288 N.W.2d 67 (N.D.1980), this Court held that the district court properly dismissed Besette's action filed on his own behalf but that the court should not have dismissed Besette's action filed on behalf of Christine. The case was remanded for proceedings on the merits of Christine's claim, and a trial was commenced for that purpose on September 30, 1980.

In his action Besette claimed that the School District had negligently maintained the Alice school playground and had negligently failed to provide proper supervision of the students on the playground. During the trial, Besette introduced evidence that upon falling from the slide Christine hit her elbow against a flat rock, approximately 4 to 6 inches in diameter, which was lying near the slide. Besette asserted that the existence of the rock near the slide constituted negligent maintenance of the playground which was a proximate cause of Christine's injury. At the close of the trial, the six-person jury entered its verdict finding in favor of the defendant School District and against Besette. The district court entered judgment accordingly, from which Besette has filed this appeal.

On appeal Besette has raised the following issues:

(1) Whether or not the trial court erred in allowing evidence of playground surfaces at other schools;

(2) Whether or not the trial court erred in allowing evidence of no prior accidents on the slide from which Christine fell;

(3) Whether or not the trial court erred upon submitting its instructions to the jury by submitting an erroneous instruction and by refusing to submit certain instructions requested by Besette;

(4) Whether or not the trial court erred in refusing to allow one of Besette's attorneys to testify as a rebuttal witness;

(5) Whether or not the trial court erred in refusing to exclude members of the School District from the jury panel; and

(6) Whether or not the trial court erred in refusing to grant a new trial on the ground that the jury verdict was contrary to the evidence.

Besette asserts that the trial court erred in allowing evidence of playground surfaces at other schools. Prior to trial, Besette made a motion *in limine* requesting the trial court to bar any reference to playground surfaces other than that of the Alice school playground, but the motion was denied. The playground at the Alice school has an earth surface covered with grass, and the School District, during the trial, made reference to the fact that certain other schools in the area have asphalt or concrete surfaces on their playgrounds. Besette asserts that the type of playground surfaces at other schools is irrelevant to the issue of whether or not the School District was negligent in its maintenance of the Alice school playground.

■ Evidence of general custom or usage is generally admissible for consideration by the trier of fact, together with all other evidence, in reaching a determination on the issue of negligence. *Brauer v. James J. Igoe & Sons Construction, Inc.,* 186 N.W.2d 459 (N.D.1971). Evidence of custom or usage is not admissible, however, for the purpose of establishing a set standard on the basis of which the conduct in question is to be held negligent or not negligent, but is merely admissible evidence to assist the trier of fact in determining whether or not the conduct of the defendant was, in the particular situation, that of a reasonably prudent person. *Schmitt v. Northern Improvement Company,* 115 N.W.2d 713 (N.D.1962). We conclude that the trial court did not err in permitting evidence of the type of surfaces existing at other school playgrounds. This was admissible evidence for the jury to consider, together with the other evidence submitted, in reaching its determination of whether or not the School District was neg-

ligent in its maintenance of the Alice school playground.

■ Besette also asserts that the trial court erred in permitting the School District to introduce evidence of no prior accidents on the slide from which Christine fell. We conclude that Besette has not preserved this error as an issue on appeal because the evidence was admitted without objection. Besette's attorney called Connie Kracht, a teacher's aide at the Alice school during the time this incident occurred, to testify as a witness on behalf of Christine. During cross-examination by the School District's attorney, Mrs. Kracht was questioned:

"Q. Now are you aware of any other children falling off this slide in this way in Alice?

"A. Not that I know of.

"Q. Have you heard of anyone up there at Alice injuring themselves on this slide?

"A. No."

This evidence was admitted without objection by counsel for Besette. Besette's pretrial motion *in limine* was limited to a request that the trial court not allow any evidence regarding the surface or condition of other playgrounds, and it did not include a request to prohibit evidence of no prior accidents. Consequently, we conclude that this matter has not been preserved as an issue for appeal.

Besette contends that the trial court erred in submitting its instructions to the jury on the following grounds: (a) that the trial court erred in submitting the following instruction:

"You are instructed that the normal use of the equipment for an extended period of time with no problems raises an inference that the equipment was fit for its intended use. See *Air Heaters, Inc. v. Johnson Elec., Inc.*, 258 N.W.2d 649 at 655 (N.D.Sup.Ct.)."

and (b) that the trial court erred in refusing to submit to the jury Besette's requested instructions numbered 2, 3, 6, 9, and 10 which deal with the School District's duty of supervising playground activity and of maintaining the playground premises.

■■ On appeal jury instructions must be reviewed as a whole, and if they correctly advise the jury as to the law they are sufficient although parts of them standing alone may be erroneous and insufficient. *South v. National Railroad Passenger Corporation*, 290 N.W.2d 819 (N.D.1980). The trial court's refusal to give requested instructions is not reversible error when the submitted instructions fairly and adequately apprise the jury of the law. *South, supra; Wasem v. Laskowski*, 274 N.W.2d 219 (N.D.1979).

■ We believe that the following testimony by Dr. John Schultz, who was called on behalf of Besette as an expert witness on recreation and park safety, placed the slide's fitness into question with regard to which the objected instruction was properly submitted:

"Q. And what are the types of things you look for in terms of a playground?

"A. A number of things. One is the layout of those facilities; making sure certain pieces of equipment or apparatus are oriented correctly. Another thing would be that slides—we have a choice, that should be oriented to the north so the sunlight does not shine on the slide pattern to make it hot or to face the children in the hot days of summer.

Surfacing materials below playground apparatus; the latest information that has been gained is that most of our recommendations is that playground apparatus should be put in a sandpit type of thing, minimal of a foot, and we recommend generally two feet of sand.

\* \* \* \* \* \*

"Q. Are these the type of things you look for and would give guidance to a particular district in terms of—

"A. Yes. I think the other thing we are concerned about is the type of material in the equipment; some is good and some not so good in terms of how long it lasts, and how much you pay for them; and how the pieces of apparatus are built, so as to protect against children getting clothing or extremities caught in the ap-

paratus, and the heights of the pieces of apparatus.

\*   \*   \*   \*   \*   \*

"Q. What kind of inspection did you make of the slide in question, Doctor?
"A. Well, we looked at the slide, the slide bed, the condition of the slide bed; we looked at the underside of the slide; the height; and the area around the base of the slide where, I understand, the plaintiff fell.

\*   \*   \*   \*   \*   \*

"Q. Doctor, what about the slide itself? Think back and look at the slide there (indicating). Do you have an opinion as to whether a child six years old should have been allowed to use that slide? Do you have an opinion?
"A. Yes, I have an opinion.
"Q. Okay.
"A. I think we presently look upon up to ages 14 in using that kind of playground apparatus. I do know that there are various heights of slides marketed. Obviously, the shorter slides for smaller children and that one is, I suppose, an average height of slide. I think they go up as high as sixteen feet, and as small as probably four feet in terms of height. In planning park and recreation facilities we generally recommend that play apparatus for small children, up to seven or eight, be separated from that for larger children; that it is scaled appropriately to their anthrogeometric measurements— height, weight—average for children of certain ages; and that some efforts either by fencing, try to keeping the older children out and the smaller children in, and vice versa. That seemed to be an awfully high slide for a first or second grader to be on, but I also know first and second graders will go as high as they can go."

In addition to giving the jury general instructions on negligence and duty the trial court submitted the following instruction:

"A school must exercise ordinary care to keep its premises and facilities in rea-
sonably safe condition for use of minors who foreseeably will make use of premises and facilities.

"Schools are under a duty to insure the safety of their students during playground activities as well as a duty to properly maintain the premises.

"The school owes to its children to exercise such care of them as a parent of ordinary prudence would observe in a comparable circumstance.

"The duty of care owed a child is greater than that owed an adult against unreasonable risk of injury. The standard of care used in dealing with adults, however, is not considered adequate for those entrusted with the care of children. The degree of due care increases with the immaturity of the child.

"While an adult is held to the standard of a reasonable man an infant is held to a standard of care which would be exercised by the ordinarily prudent child of his own age, capacity, intelligence and experience. Negligence, as applied to a minor child, is the doing of that which an ordinarily prudent person of the age, intelligence, experience and capacity of such child would not do under the same or similar circumstances, or the failure to do that which such a person would do under the same or similar circumstances. In this case, Christine Besette, at the time of the accident was six years old and her activities must be measured on the basis of a child of that age."

We believe that the foregoing instruction, when reviewed together with the other submitted instructions, fairly and adequately apprised the jury of the School District's duty regarding both maintenance and supervision of the playground.

We conclude that it was not error for the trial court to refuse to submit Besette's requested instructions nor was it error for the court to submit its instruction regarding an inference arising from the use of equipment. When considered together, the submitted instructions fairly and accurately apprised the jury of the law.

Besette asserts that the trial court erred in refusing to allow Mr. Wayne Jones, one of Besette's attorneys in the case, to testify as a rebuttal witness. During the trial Besette's expert witness, Dr. Schultz, testified that Mr. Eddie Wavra, the School District's maintenance man for the Alice school, told Mr. Schultz that with regard to the rock by the slide, "Well, it has been there as long as he had worked for the school district." Mr. Wavra, testified, however, that he did not remember making that statement to Mr. Schultz and that he was unaware of the existence of the rock until after Christine's accident had occurred. With regard to this matter, Mr. Wavra's testimony at his deposition, taken during April, 1980, was consistent with his testimony at the trial. Subsequent to Mr. Wavra's trial testimony Besette attempted to call Mr. Jones as a rebuttal witness to testify that he was present during the conversation between Mr. Schultz and Mr. Wavra and that Mr. Wavra did make a statement that he had knowledge of the rock's existence prior to Christine's accident. The trial court refused to allow Mr. Jones to testify on the ground that he was an attorney of record in the case for Besette.

The Code of Professional Responsibility discourages any attorney from assuming the role of both advocate and witness, and Disciplinary Rule [DR] 5–102(A) specifically provides:

> "(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4)."

■ DR 5–102(A) requires that an attorney, upon learning that he must testify on behalf of his client, shall withdraw from the case and his firm shall not continue representation of the case unless one of the circumstances enumerated under DR 5–101(B) is present. Neither Mr. Jones nor his firm offered to withdraw from the case, nor was there an attempt to show that any circumstance under DR 5–101(B) was applicable. It was not incumbent upon the trial court to request Mr. Jones to withdraw as counsel so that he may be allowed to testify.

■ It is inconsistent to act as both advocate and witness at a trial. The practice is discouraged by both the Code of Professional Responsibility and the courts, and it is within the trial court's discretion to allow or refuse to allow an attorney to testify on behalf of his client. *See, People v. Attaway*, 41 Ill.App.3d 837, 354 N.E.2d 448 (1976); *People v. Stratton*, 64 Mich.App. 349, 235 N.W.2d 778 (1975); *People v. Johnson*, 46 Mich.App. 212, 207 N.W.2d 914 (1973). If Mr. Wavra had given surprise testimony at the trial inconsistent with his deposition testimony or if counsel for Besette had offered to withdraw from the case perhaps it would have been an abuse of discretion for the trial court to refuse to allow Mr. Jones to testify. However, that question is not before us today. Under the circumstances of this case we conclude that the trial court did not abuse its discretion in refusing to allow Mr. Jones to testify as a rebuttal witness.

■ Besette asserts that the trial court erred when it refused to exclude members of the School District from the jury panel. It is undisputed that no School District member became a member of the jury selected to hear the case and that Besette did not exercise all of his peremptory jury challenges. The law is well-settled in this state that no error can be predicated on the overruling of a challenge for cause if the appellant did not exhaust all of his peremptory jury challenges. *State v. McLain*, 301 N.W.2d 616 (N.D.1981); *State v. Uhler*, 32 N.D. 483, 156 N.W. 220 (1916). Consequently, Besette has not preserved this error for review on appeal.

■ Besette also asserts that the trial court erred when it refused to grant a new

trial on the ground that the jury verdict was not supported by the evidence. With regard to this issue, our review is limited to a determination of whether or not there is substantial evidence to sustain the verdict. *Johnson v. Monsanto Company*, 303 N.W.2d 86 (N.D.1981); *Boe v. National Farmer's Organization, Inc.*, 277 N.W.2d 291 (N.D. 1979). In *Waletzko v. Herdegen*, 226 N.W.2d 648 (N.D.1975), this Court stated, with regard to the review of a trial court's denial of a motion for judgment notwithstanding the verdict or in the alternative for a new trial:

> "... the credibility of the witnesses and the weight to be given their testimony are questions of fact for the jury to determine. In determining the sufficiency of the evidence to sustain the verdict of the jury, we must view the evidence in the light most favorable to the verdict. Our review of the facts is limited to consideration of whether there is substantial evidence to sustain the verdict; if there is, we are bound by the verdict." 226 N.W.2d at 653. [Citations omitted.]

Upon reviewing the record in this case we conclude that there was substantial evidence from which the jury could have concluded that neither negligent maintenance nor negligent supervision of the Alice school playground by the School District was a proximate cause of Christine's injury.

With regard to the issue of supervision, there is evidence in the record that Mrs. Kracht, who was supervising the playground activity at the time of Christine's accident, was stationed near Christine and had watched her correctly climb and begin her descent down the slide. Although Mrs. Kracht testified that she was not watching when Christine fell from near the bottom of the slide this is not such evidence as would require a finding, as a matter of law, that the School District's supervision was negligent or that it was the proximate cause of Christine's injury.

With regard to the issue of the playground maintenance, Besette focuses primarily upon the rock which was located near the slide and upon which Christine allegedly hit her elbow when she fell from the slide. There is evidence in the record, however, that the rock was buried beneath grass and topsoil and was not exposed. Besette's own witness, Dr. Erwin Phillip Wenz, an orthopedic surgeon, testified that the type of fracture or injury suffered by Christine is usually caused when children fall "with their hands outstretched." There is also evidence that the rock was located, in terms of a vertical plane, within 4 to 5 inches from the side of the slide making it unlikely for Christine to have hit it upon falling from the slide. Besette's expert witness, Dr. Schultz, was questioned:

> "Q. And really, as a practical matter, when you fall off to the side of something like that, isn't the likelihood that the child is going to fall more than five inches, at best, away from the side of the slide?"

He responded, in part:

> "It could happen as you describe it or it could happen in a different way."

Upon reviewing the record, we conclude that there is substantial evidence upon which the jury could have found that neither negligent supervision or maintenance of the school playground by the School District was a proximate cause of Christine's injury. Accordingly, we conclude that the trial court did not err in refusing to grant a new trial on the ground that the jury's verdict was contrary to the evidence.

In view of the foregoing opinion, the judgment of the District Court of Ransom County is hereby affirmed.

SAND, PEDERSON and VANDE WALLE, JJ., and BERNING, District Judge, concur.

BERNING, District Judge, sitting in place of PAULSON, J., disqualified.